# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| LANIER LAW, LLC, | * |
| a Florida limited liability | * |
| company, also doing | * |
| business as REDSTONE | * |
| LAW GROUP and as THE LAW | * |
| OFFICES of MICHAEL W. | * |
| LANIER; | * Civil Case No. 3:14-CV-780-J-3-PDB |
| | * |
| FORTRESS LAW GROUP, LLC, | * |
| a Florida limited liability | * |
| company; | * |
| | * |
| SURETY LAW GROUP, LLP, a | * |
| District of Columbia | * |
| limited liability partnership; | * **PLAINTIFF FEDERAL TRADE** |
| | * **COMMISSION'S COMPLAINT** |
| LIBERTY & TRUST LAW GROUP OF | * **FOR PERMANENT INJUNCTION** |
| FLORIDA, LLC, a Florida | * **AND OTHER EQUITABLE** |
| limited liability company; | * **RELIEF** |
| | * |
| and | * |
| | * |
| MICHAEL W. LANIER, individually | * |
| and as an owner, officer, | * |
| manager, and/or | * |
| representative of the | * |
| above-mentioned entities; | * |
| | * |
| Defendants. | * |
| | * |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b; Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101 *et seq.*; and the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009) ("Omnibus Act"), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009) ("Credit Card Act"), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"), 12 U.S.C. § 5538, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310; and the Mortgage Assistance Relief Services Rule ("MARS Rule"), 16 C.F.R. Part 322, recodified as Mortgage Assistance Relief Services ("Regulation O"), 12 C.F.R. Part 1015, in connection with the marketing and sale of mortgage assistance relief services.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345; 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b) , and Section 626 of the Omnibus Act, as clarified by Section 511 of the Credit Card Act, and amended by Section 1097 of the Dodd-Frank Act, 12 U.S.C. § 5538.

3.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.     Plaintiff FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC enforces the Telemarketing Act, 15 U.S.C. § 6101 *et seq.* Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.  In addition, pursuant to 12 U.S.C. § 5538, the FTC also enforces the MARS Rule, which requires mortgage assistance relief services ("MARS") providers to make certain disclosures, prohibits certain representations, and generally prohibits the collection of an advance fee.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, the TSR, the MARS Rule, and Regulation O; and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A)-(B), 57b, 6102(c), and 6105(b) ; § 626, 123 Stat. at 678, as clarified by § 511, 123 Stat. at 1763-64, and amended by § 1097, 124 Stat. at 2102-03, 12 U.S.C. § 5538.

## DEFENDANTS

6.     Defendant **Lanier Law, LLC** ("Lanier Law"), also doing business as **Redstone Law Group** ("Redstone") and as **The Law Offices of Michael W. Lanier**, is a

3

limited liability company with its principal place of business at 2711 Dean Road, Jacksonville, Florida. At all times material to this Complaint, acting alone or as part of the common enterprise described in Paragraph 11, Lanier Law advertises, markets, provides, offers to provide, or arranges for others to provide MARS, as defined in 16 C.F.R. § 322.2, recodified as 12 C.F.R. § 1015.2. Lanier Law transacts or has transacted business in this District and throughout the United States.

7.      Defendant **Fortress Law Group, LLC** ("Fortress") is a limited liability company with its principal place of business at 2711 Dean Road, Jacksonville, Florida. At all times material to this Complaint, acting alone or as part of the common enterprise described in Paragraph 11, Fortress advertises, markets, provides, offers to provide, or arranges for others to provide MARS, as defined in 16 C.F.R. § 322.2, recodified as 12 C.F.R. § 1015.2. Fortress Law Group transacts or has transacted business in this District and throughout the United States.

8.      Defendant **Surety Law Group, LLP** ("Surety") is a District of Columbia limited liability partnership with its principal place of business at 1629 K Street, Suite 300, Washington, D.C. At all times material to this Complaint, acting alone or as part of the common enterprise described in Paragraph 11, Surety advertises, markets, provides, offers to provide, or arranges for others to provide MARS, as defined in 16 C.F.R. § 322.2, recodified as 12 C.F.R. § 1015.2. Surety Law Group transacts or has transacted business in this District and throughout the United States.

9.      Defendant **Liberty & Trust Law Group of Florida, LLC** ("Liberty") is a Florida limited liability company with its principal place of business at 4110 Southpoint

4

Blvd., Suite 500, Jacksonville, Florida 32216. At all times material to this Complaint, acting

alone or as part of the common enterprise described in Paragraph 11, Liberty advertises,

markets, provides, offers to provide, or arranges for others to provide MARS, as defined in

16 C.F.R. § 322.2, recodified as 12 C.F.R. § 1015.2. Liberty transacts or has transacted

business in this District and throughout the United States.

   10. Defendant **Michael W. Lanier** ("Lanier") is or was an owner, officer,

manager, and/or representative of Lanier Law, Fortress, Surety, and Liberty. At all times

material to this Complaint, acting alone or in concert with others, and through interrelated

entities described in Paragraphs 6-9, he has formulated, directed, controlled, had the

authority to control, or participated in the acts and practices of Lanier Law, Fortress,

Surety, and Liberty, including the acts and practices set forth in this Complaint. Michael W.

Lanier resides in this district and, in connection with the matters alleged herein, transacts or

has transacted business in this District and throughout the United States.

**COMMON ENTERPRISE**

   11. Lanier Law, Fortress, Surety, and Liberty (collectively, "Corporate

Defendants") have operated as a common enterprise while engaging in the deceptive acts

and practices alleged below. The Corporate Defendants have conducted the business

practices described below through interrelated companies that have common ownership,

officers, managers, business functions, employees, and/or office locations; that have

commingled funds; and/or that have shared one another's marketing materials. Because

these Corporate Defendants have operated as a common enterprise, each of them is jointly

and severally liable for the acts or practices alleged below. Defendant Michael W. Lanier

5

has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

12.     At all times material to this complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

### Overview

13.     From at least January 2011 to the present, Defendants, through the operation of the common enterprise, have engaged in a course of conduct to advertise, market, sell, provide, offer to provide, or arrange for others to provide MARS, including loan document and transaction reviews, mortgage loan modification services, and foreclosure defense services.

14.     Defendants have marketed their services in a variety of ways, including by telephone, through the U.S. Mail, and on their websites.

15.     Defendants have preyed on financially distressed homeowners by luring them into paying upfront fees and other fees with promises that they will receive legal representation from foreclosure defense attorneys who will fight their lenders to save their homes from foreclosure or make their mortgage payments substantially more affordable.  In addition to legal representation, Defendants have purported to provide consumers with forensic loan audits and other reports that will identify errors in their mortgage loan

documents, ferret out predatory lending practices, and gather other information that Defendants will use to defend against foreclosure and to win concessions from lenders.

16.     Defendants have charged an upfront fee ranging from $1000 to $4000 or, in some instances, charged monthly fees.  In numerous instances, Defendants have failed to obtain any relief for their customers.

### The Sales Pitch

17.     Defendants have initiated contact with consumers in many ways, including but not limited to unsolicited outbound telemarketing calls and letters mailed to consumers. Defendants' letters as well as their websites have contained telephone numbers that consumers are encouraged to call.  Consumers have called the telephone numbers and reached representatives of the Defendants.  These representatives have then given Defendants' sales pitch to the consumers.

18.     In numerous instances, Defendants have told consumers that Defendants will get the consumer's home loan mortgage modified by reducing the interest rate, by making the monthly payments lower, and/or by reducing the principal balance of their mortgages, or that there is a high probability they will do so.

19.     In numerous instances, Defendants have told consumers that, if the consumers hired Defendants, Defendants would likely obtain loan modifications or other concessions from lenders.

20.     In numerous instances, Defendants have told consumers that attorneys working with Defendants will be able to prevent foreclosure or, at a minimum, delay it.

21.     In numerous instances, Defendants have told consumers that they will conduct various audits or reviews of the consumers' loan documents and transactions and that many audits or reviews reveal fraud, errors, or predatory acts committed by the lender.

22.     In numerous instances, Defendants have claimed that they will use the findings from the audits and reviews to defend consumers against foreclosure and extract concessions from lenders that will lower consumers' monthly mortgage payments through reductions in loan principal and/or interest rates.

23.     In numerous instances, Defendants have told consumers that by signing up with Defendants they will obtain legal representation to fight their lenders and will be represented by an attorney in their state.

24.     In numerous instances, Defendants have requested or received payment of a fee from a consumer before the consumer has executed a written agreement between the consumer and the consumer's dwelling loan holder or servicer that incorporates the offer of mortgage assistance relief the Defendants obtained from the consumer's dwelling loan holder or servicer.

### Post-Purchase

25.     In numerous instances, consumers who sign up have not received legal representation.  Although they may have been assigned an attorney in a nominal sense, many consumers have never met or spoken to an attorney licensed in the state where they reside or where the property at issue is located, or have had only introductory conversations.

26.     In numerous instances, consumers who have signed up with Defendants have been left to negotiate on their own with lenders.

8

27.     In numerous instances, consumers who signed up with Defendants have suffered significant economic injury, including:  paying hundreds or thousands of dollars to Defendants and receiving little or no service in return; going into foreclosure; and even losing their homes.

28.     In numerous instances, after consumers have signed up with Defendants and paid the requested advance fees, Defendants have failed to obtain a loan modification, principal reduction, or other relief to stop foreclosure or make consumers' mortgage payments affordable.

## VIOLATIONS OF THE FTC ACT

29.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

30.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I

### (Deceptive Representations Regarding Loan Modifications)

31.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of  mortgage assistance relief services, Defendants have represented, directly or indirectly, expressly or by implication, that they typically will obtain mortgage loan modifications for consumers that will make their payments substantially more affordable, or will help them avoid foreclosure.

9

32.     In truth and in fact, Defendants typically do not obtain mortgage loan modifications for consumers that will make their payments substantially more affordable, or help them avoid foreclosure.

33.     Therefore, Defendants' representations as set forth in Paragraph 31 are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

### (Deceptive Representations Regarding Loan Audits)

34.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of mortgage assistance relief services, Defendants have represented, directly or indirectly, expressly or by implication, that, as a result of various loan audits, research, and reviews provided by Defendants, including a forensic loan audit, they typically will obtain mortgage loan modifications for consumers that will make their payments substantially more affordable, or will help them avoid foreclosure.

35.     In truth and in fact, Defendants typically do not obtain mortgage loan modifications for consumers that will make their mortgage payments substantially more affordable, or help them avoid foreclosure as a result of the various loan audits, research, and reviews provided by Defendants, if at all provided.

36.     Therefore, Defendants' representations as set forth in Paragraph 34 are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE MARS RULE

37.     In 2009, Congress directed the FTC to prescribe rules prohibiting unfair or

deceptive acts or practices with respect to mortgage loans.  Omnibus Act, § 626, 123 Stat. at

678, as clarified by Credit Card Act, § 511, 123 Stat. at 1763-64.  Pursuant to that direction,

the FTC promulgated the MARS Rule, 16 C.F.R. Part 322, all but one of the provisions of

which became effective on December 29, 2010.  The remaining provision, Section 322.5,

became effective on January 31, 2011.

38.     The MARS Rule and Regulation O define "mortgage assistance relief service

provider" as "any person that provides, offers to provide, or arranges for others to provide,

any mortgage assistance relief service" other than the dwelling loan holder, the servicer of a

dwelling loan, or any agent or contractor of such individual or entity.  16 C.F.R. § 322.2,

recodified as 12 C.F.R. § 1015.2.

39.     The MARS Rule and Regulation O prohibit any mortgage assistance relief

service provider from requesting or receiving payment of any fee or other consideration

until the consumer has executed a written agreement between the consumer and the

consumer's loan holder or servicer that incorporates the offer that the provider obtained

from the loan holder or servicer.  16 C.F.R. § 322.5(a), recodified as 12 C.F.R. § 1015.5(a).

40.     The MARS Rule and Regulation O prohibit any mortgage assistance relief

service provider from misrepresenting, expressly or by implication, any material aspect of

any mortgage assistance relief service, including but not limited to the likelihood of

negotiating, obtaining, or arranging any represented service or result.  16 C.F.R.

§ 322.3(b)(1), recodified as 12 C.F.R. § 1015.3(b)(1).

41.     The MARS Rule and Regulation O prohibit any mortgage assistance relief service provider from failing to place a statement in every general commercial communication disclosing that (i) the provider is not associated with the government and its service is not approved by the government or any lender, and (ii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses the provider's service.  16 C.F.R. §§ 322.4(a)(1)-(2), recodified as 12 C.F.R. §§ 1015.4(a)(1)-(2).

42.     The MARS Rule and Regulation O prohibit any mortgage assistance relief service provider from failing to place a statement in every consumer-specific commercial communication (i) confirming that the consumer may stop doing business with the provider or reject an offer of mortgage assistance without having to pay for the services, (ii) disclosing that the provider is not associated with the government and its service is not approved by the government or any lender, and (iii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses the provider's service, and  (iv) in certain cases, a statement disclosing that if they stop paying their mortgage, consumers may lose their home or damage their credit.  16 C.F.R. §§ 322.4(b)(1)-(3) and (c), recodified as 12 C.F.R. §§ 1015.4(b)(1)-(3) and (c).

43.     Pursuant to the Omnibus Act, § 626, 123 Stat. at 678, as clarified by the Credit Card Act, § 511, 123 Stat. at 1763-64 and amended by the Dodd-Frank Act, § 1097, 124 Stat. at 2102-03, 12 U.S.C. § 5538, and pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the MARS Rule or Regulation O constitutes an unfair or

deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

### (Collection of Advance Payments)

44.     In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have asked for or have received payment before consumers have executed a written agreement between the consumer and the loan holder or servicer that incorporates the offer obtained by Defendants, in violation of the MARS Rule, 16 C.F.R. § 322.5(a) and Regulation O, 12 C.F.R. § 1015.5(a).

## COUNT IV

### (Material Misrepresentations)

45.     In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants, in violation of the MARS Rule, 16 C.F.R. § 322.3(b)(1), and Regulation O, 12 C.F.R. § 1015.3(b)(1), have misrepresented, expressly or by implication, material aspects of their services, including, but not limited to:

> a. Defendants' likelihood of obtaining mortgage loans modifications for consumers that will make their payments substantially more affordable; and
>
> b. Defendants' likelihood of obtaining mortgage loan modifications for consumers that will make their payments substantially more affordable as a result of a loan audit provided by Defendants.

## COUNT V

### (Failure to Disclose)

46.     In numerous instances, in the course of providing, offering to provide, or

arranging for others to provide mortgage assistance relief services, Defendants have failed to

make the following disclosures or have failed to make the disclosures in a clear and

prominent manner:

        (a)    in all general commercial communications –

               (1)    "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender," in violation of the MARS Rule, 16 C.F.R. § 322.4(a)(1) and (a)(3), and Regulation O, 12 C.F.R. § 1015.4(a)(1) and (a)(3); and

               (2)    "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of the MARS Rule, 16 C.F.R. § 322.4(a)(2) and (a)(3), and Regulation O, 12 C.F.R. § 1015.4(a)(2) and (a)(3);

        (b)    in all consumer-specific commercial communications –

               (1)    "You may stop doing business with us at any time.  You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our

services," in violation of the MARS Rule, 16 C.F.R.
§ 322.4(b)(1) and (b)(4), and Regulation O, 12 C.F.R.
§ 1015.4(b)(1) and (b)(4);

(2)    "[Name of company] is not associated with the government,
and our service is not approved by the government or your
lender," in violation of the MARS Rule, 16 C.F.R.
§ 322.4(b)(2) and (b)(4), and Regulation O, 12 C.F.R.
§ 1015.4(b)(2) and (b)(4);

(3)    "Even if you accept this offer and use our service, your lender
may not agree to change your loan," in violation of the MARS
Rule, 16 C.F.R. § 322.4(b)(3) and (b)(4), and Regulation O, 12
C.F.R. § 1015.4(b)(3) and (b)(4); and

(4)    "If you stop paying your mortgage, you could lose your home
and damage your credit," in violation of the MARS Rule, 16
C.F.R. § 322.4(c), and Regulation O, 12 C.F.R. § 1015.4(c).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

47.    Congress directed the FTC to prescribe rules prohibiting abusive and
deceptive telemarketing acts or practices pursuant to the TSR in 1995, extensively amended
it in 2003, and amended certain provisions thereafter.  16 C.F.R. Part 310.

48.    The 2003 amendments to the TSR established a national do-not-call registry
(the "National Do Not Call Registry"), a list of consumers who do not wish to receive
certain types of telemarketing calls.  Consumers can register their telephone numbers on the

National Do Not Call Registry without charge either through a toll-free telephone call or over the Internet at *donotcall.gov*. The National Do Not Call Registry is maintained by the FTC.

49.     The TSR prohibits sellers and telemarketers from initiating outbound telephone calls to numbers on the National Do Not Call Registry. 16 C.F.R. § 310.4(b)(1)(iii)(B).

50.     The TSR prohibits sellers and telemarketers from initiating outbound telephone calls to any consumer when that consumer previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered, or made by or on behalf of the charitable organization for which a charitable contribution is being solicited.  16 C.F.R. § 310.4(b)(1)(iii)(A).

51.     The TSR defines a seller as "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration." 16 C.F.R. § 310.2(aa).

52.     The TSR defines a telemarketer as "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor." 16 C.F.R. § 310.2(cc).

53.     The TSR defines an outbound telemarketing call as a "telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution." 16 C.F.R. § 310.2(v).

54.     The TSR defines telemarketing as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call." 16 C.F.R. § 310.2(dd).

55.     The FTC allows sellers, telemarketers, and other permitted organizations to access the National Do Not Call Registry over the Internet at *telemarketing.donotcall.gov*, to pay the fee(s) if required by the TSR, and to download a list of numbers that are prohibited from being called.

56.     The TSR prohibits sellers and telemarketers from calling any telephone number within a given area code unless the seller on whose behalf the call is made has paid the annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry.  16 C.F.R. § 310.8.  Consumers who receive telemarketing calls to their registered numbers can complain of National Do Not Call Registry violations the same way they registered, through a toll-free telephone call or over the Internet at donotcall.gov, or by otherwise contacting law enforcement authorities.

57.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

58.     Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing" as those terms are defined in the TSR, 16 C.F.R. § 310.2(aa), (cc), and (dd).

59.     Defendants initiate outbound telephone calls to consumers in the United States to induce the purchase of Defendants' services.

60.     Defendants have engaged in telemarketing by a plan, program, or campaign conducted to induce the purchase of goods or services by use of one or more telephones and which involves more than one interstate telephone call.

## COUNT VI

### (Calls in Violation of National Do Not Call Registry)

61.     In connection with telemarketing, Defendants have initiated or have caused others to initiate numerous outbound telephone calls to consumers who have registered their telephone numbers on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

## COUNT VII

### (Failure to Pay Required Fee for Access to National Do Not Call Registry)

62.     In connection with telemarketing, Defendants have initiated, or caused others to initiate, numerous outbound telephone calls to telephone numbers within a given area code when Defendants had not, either directly or through another person, paid the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry, in violation of the TSR, 16 C.F.R. § 310.8.

### CONSUMER INJURY

63.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the MARS Rule and Regulation O, and the TSR.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts

18

or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to
injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

64.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to
grant injunctive and such other relief as the Court may deem appropriate to halt and redress
violations of any provision of law enforced by the FTC.  The Court, in the exercise of its
equitable jurisdiction, may award ancillary relief, including rescission or reformation of
contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies,
to prevent and remedy any violation of any provision of law enforced by the FTC.

65.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 626 of the Omnibus
Act authorize this Court to grant such relief as the Court finds necessary to redress injury to
consumers resulting from Defendants' violations of the TSR and the MARS Rule, including
rescission and reformation of contracts and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Federal Trade Commission, pursuant to Sections 13(b) and 19 of
the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the TSR, 15 U.S.C. § 6105(b),  the
Omnibus Act, and the Court's own equitable powers, requests that the Court:

A.      Award Plaintiff such preliminary injunctive and ancillary relief as may be

necessary to avert the likelihood of consumer injury during the pendency of

this action, and to preserve the possibility of effective final relief, including

but not limited to a temporary and preliminary injunction, an order freezing

assets, immediate access, and appointment of a receiver;

19

B.    Enter a permanent injunction to prevent future violations of the FTC Act, the

TSR, and the MARS Rule/Regulation O by Defendants;

C.    Award such relief as the Court finds necessary to redress injury to consumers

resulting from Defendants' violations of the FTC Act, the TSR, and the

MARS Rule/Regulation O, including but not limited to, rescission or

reformation of contracts, restitution, the refund of monies paid, and the

disgorgement of ill-gotten monies; and

D.    Award Plaintiff the costs of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.

Dated:  June 16, 2014               Respectfully submitted,

JONATHAN E. NUECHTERLEIN
General Counsel

HAROLD E. KIRTZ
Florida Special Bar Number A5500743

MARCELA MATEO
Georgia Bar Number 397722

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION
225 Peachtree Street, Suite 1500
Atlanta, Georgia 30303
404-656-1357 (Kirtz)
404-656-1361 (Mateo)
404-656-1379 (fax)
hkirtz@ftc.gov
mmateo@ftc.gov