**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

FEDERAL TRADE COMMISSION,

    Plaintiff,

vs.

                                  Case No. 3:14-cv-786-J-34PDB

LANIER LAW, LLC, et al.,

    Defendants.
_____/

**O R D E R**

**THIS CAUSE** is before the Court on Defendant Michael W. Lanier's Motion to Vacate Asset Freeze (Doc. 200; Motion), filed on August 25, 2015.  Plaintiff Federal Trade Commission (the FTC) filed a response in opposition to the Motion on September 10, 2015.  See Plaintiff's Response to Defendant Michael W. Lanier's Motion to Vacate Asset Freeze (Doc. 203; Response).  With leave of Court, see Order (Doc. 209), Defendant Michael W. Lanier (Lanier) filed Defendant Michael W. Lanier's Reply to Plaintiff's Response (Doc. 211; Reply) on October 2, 2015.  Accordingly, this matter is ripe for review.

**I.**    **Summary of the Arguments**

In his Motion, Lanier requests that the Court vacate, in whole or in part, the freeze of his personal assets that the Court first imposed on July 8, 2014.  See Motion at 1; see also Minute Entry (Doc. 9); Ex Parte Temporary Restraining Order With an Asset Freeze and Other Equitable Relief, and Scheduling a Preliminary Injunction Hearing (Doc. 10).  In support, Lanier contends that the asset freeze is overbroad because the FTC has failed to present any reasonable approximation of his allegedly ill-gotten gains, or establish the

period of time during which Lanier was allegedly engaged in the improper conduct. See id. at 2-3. Lanier further asserts that the Court "has discretion to unfreeze assets so that a Defendant can use some assets to pay living expenses or attorney's fees." See id. at 4. According to Lanier, because "[n]o wrongdoing has yet been proved," the Court should exercise its discretion to vacate the freeze so that Lanier may consult with an experienced attorney. Id. at 4-5.

In its Response, the FTC argues that the Court should deny the Motion because "the frozen assets are significantly less than Defendant Lanier's potential liability in this case and because he has failed to comply with the Preliminary Injunction (Doc. Entry 59) by providing information regarding his transfers of assets." See Response at 1. In support, the FTC contends that Lanier's total frozen assets amount to less than $176,000, while his potential liability for the activities of the alleged common enterprise "is estimated to be millions of dollars . . . ." Id. at 2. Indeed, the FTC asserts that Lanier's potential liability for the activities of Lanier Law, LLC alone is "at least $3 million." Id. According to the FTC, a more precise approximation of Lanier's allegedly ill-gotten gains is unavailable because Lanier failed to keep appropriate records of his client trust accounts. Id. at 3. As Lanier's potential liability far exceeds the amount of his frozen assets, the FTC argues that the Court should maintain the asset freeze. Id. In addition, the FTC asserts that the Court should reject Lanier's request because he comes before the Court with unclean hands. Specifically, the FTC reports that Lanier has failed to provide the FTC "with a statement, verified under oath, of payments, transfers, and assignments worth $1,000 or more since January 1, 2006," as required by the Preliminary Injunction. Id. at 4. As an example, the FTC presents evidence of a $100,000 transfer from a Lanier Law, LLC checking account

to a different checking account of the same entity, and then Lanier's subsequent withdrawal of those funds. Id.

Lanier replies that the FTC's Response is "disingenuous." See Reply at 1-2. He argues that the bank statements for accounts owned by Lanier and his law firms provide an adequate basis for a "rough estimate" of the allegedly "ill-gotten gains." Id. at 1. In addition, Lanier asserts that he did maintain proper trust account records, contrary to the FTC's representations, but that he transferred those records to the firms that took over the representation of his clients when he closed his firm in 2013. See id. at 2. Lanier adds that the FTC is "disingenuous" in objecting that he has not been forthcoming with discovery because "no one asked Lanier about [the $100,000] transfer, or any other transfer, in his deposition," and the FTC did not file a motion to compel discovery as to Lanier. Id. at 2-3. Lanier maintains that all he seeks is use of his assets "other than what might be claimed to be 'ill-gotten gains' in order to fund a reasonable defense to the FTC's still-unproven claims." Id. at 3-4. Lanier adds that his interests in eight residences, part of the frozen assets referenced in the FTC's Response, were acquired in his personal capacity from 1993 to 2007, and "[a]ny equity in these properties is a function of properly performing landlord tenant agreements and general real estate appreciation." Id. at 4. As such, Lanier argues that they are not "ill-gotten gains" and should be made available to Lanier to fund his defense of the activities that did not begin until 2010. Id.

## II. Discussion

In Plaintiff Federal Trade Commission's Amended Complaint for Permanent Injunction and Other Equitable Relief (Doc. 91; Amended Complaint), the FTC seeks relief including, inter alia, "the disgorgement of ill-gotten monies." See Amended Complaint at

22. Disgorgement is an appropriate remedy under section 13(b) of the Federal Trade Commission Act (FTCA), 15 U.S.C. § 53(b), see Fed. Trade Comm'n v. Gem Merch. Corp., 87 F.3d 466, 468-70 (11th Cir. 1996), and is "measured by the [defendants'] unjust enrichment," not consumer loss.  See Fed. Trade Comm'n v. Wash. Data Res., Inc., 704 F.3d 1323, 1326 (11th Cir. 2013).  A defendant's unjust enrichment is calculated as "the amount of net revenue (gross receipts minus refunds), rather than the amount of profit (net revenue minus expenses)."  See id. at 1327 (11th Cir. 2013).  Significantly, "[d]isgorgement does not require the district court to apply equitable tracing rules to identify specific funds in the defendant's possession that are subject to return."  See Fed. Trade Comm'n v. Bronson Partners, LLC, 654 F.3d 359, 373 (2d Cir. 2011); see also Fed. Trade Comm'n v. Williams, Scott & Assocs. LLC, No. 1:14-CV-1599-HLM, 2015 WL 7351993, at *1 (N.D. Ga. Sept. 22, 2015) (collecting cases).  Moreover, the Court has the equitable power to impose an asset freeze where it "may be needed to make permanent relief possible."  See Gem Merch. Corp., 87 F.3d at 468-69; Fed. Trade Comm'n v. IAB Mktg. Assocs., LP, 746 F.3d 1228, 1234 (11th Cir. 2014).  To obtain an asset freeze, the FTC's burden of proof is "relatively light."  IAB Mktg. Assocs., 746 F.3d at 1234.  Indeed, "[e]xactitude is not a requirement" and only a "reasonable approximation of a defendant's ill-gotten gains" is necessary.  See Sec. & Exch. Comm'n v. ETS Payphones, Inc., 408 F.3d 727, 735 (11th Cir. 2005) (internal quotations omitted); IAB Mktg. Assocs., 746 F.3d at 1234 (citing ETS Payphones, Inc., 408 F.3d at 735).

The FTC approximates Lanier's potential liability for the conduct of the alleged common enterprise in the millions of dollars.  See Response at 2.  Indeed, in its initial motion for a temporary restraining order and preliminary injunction, the FTC asserted that

"Defendants' scam has caused at least ten million dollars in consumer injury since 2011." See Plaintiff Federal Trade Commission's Ex Parte Motion for a Temporary Restraining Order With Ancillary Equitable Relief and a Preliminary Injunction and Memorandum in Support of the Ex Parte Motion (Doc. 6; Preliminary Injunction Motion) at 8. In support, the FTC attached the affidavit of its investigator, Michael S. Liggins, as well as the affidavits of numerous aggrieved consumers. See Preliminary Injunction Motion, Exs. 1-4, 6-8, 10-14, 17-21, 23-25. In its Response to the instant Motion, the FTC submits the Declaration of Evan Castillo who states that upon review of an IOLTA trust account owned by Lanier Law LLC, and another trust account owned by Michael Lanier, he calculates a total of $3,237,552.68 in deposits from January 8, 2011, through October 31, 2012.[1] See Declaration of Evan Castillo Pursuant to 28 U.S.C. § 1746 (Doc. 203-1; Castillo Decl.) ¶¶ 5-7. Moreover, the FTC presents evidence that Lanier's current frozen assets total less than $176,000. See Response at 2; Castillo Decl. ¶¶ 4, 8. Lanier fails to present any evidence to undermine the FTC's estimates. See Fed. Trade Comm'n v. Wash. Data Res., 856 F. Supp. 2d 1247, 1281 (M.D. Fla. 2012) ("The FTC bears the burden to show the 'reasonably approximate' amount of the defendant's unjust gain. Next, the burden shifts

---

[1] Lanier contends that the freeze is overbroad because his potential liability cannot include any time period during which he was not involved in the alleged deception. See Motion at 3-4. Without any citation to the record, Lanier asserts that "[t]he depositions and declarations had herein all show that Defendant Michael W. Lanier had entirely removed himself from any participation in any of the alleged 'deception' at least as soon as the Florida Bar became involved." See id. at 4. However, in its Response, the FTC provides an estimate of Lanier's potential liability only for the period of time from January 8, 2011, until October 31, 2012. See Response at 2 n.5. In his own Declaration, Lanier concedes that he did not stop accepting new clients as a result of the Florida Bar's investigation until October 2012. See Declaration of Michael W. Lanier (Doc. 25) ¶¶ 10-13. As such, even accepting Lanier's timeline, he still faces at least $3 million in potential liability for the activities of Lanier Law, LLC between January 8, 2011 and October 31, 2012.

    Regardless, the Court extensively discussed the record when it pronounced its findings at the August 4, 2014 and February 19, 2015 Preliminary Injunction Hearings, and found substantial evidence that Lanier continued to participate in the alleged common enterprise long after the Florida Bar proceedings. See Transcript of Continuation of Preliminary Injunction Hearing (Doc. 62) at 35-38; Transcript of Telephonic Continuation of Preliminary Injunction Hearing (Doc. 122) at 6-13. In the absence of any new evidence to rebut those findings, Lanier's arguments to the contrary are entirely without merit.

to the defendants to show the inaccuracy of the FTC's figure." (quoting Fed. Trade Comm'n v. Verity Int'l, Ltd., 443 F.3d 48, 67 (2d Cir. 2006))); Fed. Trade Comm'n v. QT, Inc., 512 F.3d 858, 864 (7th Cir. 2008) ("A court is entitled to proceed with the best available information; if defendants thought that their profits for these years were below $16 million, they should have produced their own figures—for once the FTC produces a reasonable estimate, the defendants bear the burden of showing that the estimate is inaccurate."). Moreover, Lanier's contention that the assets he acquired prior to the allegedly improper conduct should not be subject to the asset freeze is unavailing because "the frozen assets need not be traceable to the fraudulent activity underlying a lawsuit." See Williams, Scott & Assocs. LLC, 2015 WL 7351993, at *1; Bronson Partners, LLC, 654 F.3d at 373; Fed. Trade Comm'n v. IAB Mktg. Assocs., LP, 972 F. Supp. 2d 1307, 1315-16 (S.D. Fla. 2013); Sec. & Exch. Comm'n v. Lauer, 445 F. Supp. 2d 1362, 1369-70 (S.D. Fla. 2006); see also Sec. & Exch. Comm'n v. Lauer, 478 F. App'x 550, 554 (11th Cir. 2012).  Thus, because Lanier's potential liability vastly exceeds his frozen assets, and for the reasons stated on the record in granting the preliminary injunction, the Court finds that the asset freeze is appropriate under the law.  See IAB Marketing Assocs., 746 F.3d at 1234; see also Commodity Futures Trading Comm'n v. Levy, 541 F.3d 1102, 1114 (11th Cir. 2008) ("[A] district court may freeze a defendant's assets to ensure the adequacy of a disgorgement remedy.").

To the extent Lanier requests that the Court exercise its discretion to unfreeze a portion of his assets so that he may obtain legal counsel, the Court finds that such relief is not appropriate in this case.  See Motion at 4-5.  Having found that the FTC is substantially likely to prevail against Lanier on the merits, the Court has a duty to ensure that Lanier's

assets are available to make restitution to the injured customers. See Fed. Trade Comm'n v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1031 (7th Cir. 1988). On the current record, it appears that the frozen assets fall far short of Lanier's potential liability for the alleged fraud. As such, it is extremely unlikely that these assets will be adequate to redress any consumer injuries if Lanier is ultimately found liable. Given this vast disparity, and the likelihood that attorney's fees would consume a significant portion, if not all, of what little assets remain, the Court will deny Lanier's request. See Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc., 67 F.3d 766, 775 (9th Cir. 1995) ("According to the record, the frozen assets fell far short of the amount needed to compensate [defendants'] customers. This was reason enough in the circumstances of this case for the district court, in the exercise of its discretion, to deny the attorney fee application."); Williams, Scott & Assocs. LLC, 2015 WL 7351993, at *2; IAB Mktg. Assocs., LP, 972 F. Supp. 2d at 1313-14. In addition, the Court notes that the evidence of the unaccounted-for withdrawal of a large sum of money from the Lanier Law bank account further convinces the Court that unfreezing any portion of Lanier's assets is unwarranted. See Response at 4, Att. F-G. In light of the foregoing, it is

**ORDERED**:

Defendant Michael W. Lanier's Motion to Vacate Asset Freeze (Doc. 200) is **DENIED.**

**DONE AND ORDERED** at Jacksonville, Florida on December 22, 2015.

MARCIA MORALES HOWARD
United States District Judge

7

lc11
Copies to:

Counsel of Record
Pro Se Parties