UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FEDERAL TRADE COMMISSION
   Plaintiff,


     v.


LANIER LAW LLC, a Florida limited  liability
     company, also d/b/a REDSTONE LAW
     GROUP and as LAW OFFICES OF
     MICHAEL W. LANIER;


FORTRESS LAW GROUP LLC,
a Florida limited liability company;


SURETY LAW GROUP LLP,
a District of Columbia limited liability partnership;


LIBERTY & TRUST LAW GROUP OF
     FLORIDA LLC,  a Florida limited liability
     company;


FORTRESS LAW GROUP, PC, a District of
     Columbia corporation;


REDSTONE LAW GROUP, LLC, a District of
     Columbia limited liability company, also
     d/b/a REDSTONE LAW GROUP, LLP;


MICHAEL W. LANIER, individually and as an
     owner, officer, manager, and/or
     representative of the above-mentioned
     entities;


ROGELIO ROBLES, aka Roger Robles,
     individually and as an owner, officer,

Case No. 3:14-CV-786-J-34PDB

**FINAL ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS LANIER LAW LLC, FORTRESS LAW GROUP LLC, LIBERTY & TRUST LAW GROUP OF FLORIDA LLC, FORTRESS LAW GROUP PC, MICHAEL W. LANIER, AND ROGELIO (ROGER) ROBLES**

manager, and/or representative of Surety
Law Group, LLP, Fortress Law Group, PC,
and Redstone Law Group, LLC ;

and

EDWARD WILLIAM RENNICK III, individually
and as an owner, officer, manager, and/or
representative of Surety Law Group, LLP,
Fortress Law Group, PC, and Redstone Law
Group, LLC,

Defendants.

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its

Complaint for Permanent Injunction and Other Equitable Relief, subsequently amended as

Amended Complaint for Permanent Injunction and Other Equitable Relief ( "Complaint"),

for a permanent injunction, consumer redress, and other equitable relief in this matter,

pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15

U.S.C. §§ 53(b) and 57b.  The Court now resolves this action by entering the following Final

Order.

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1.     This Court has jurisdiction over this matter.

2.     For the reasons stated in the Court's July 7, 2016 Order (Doc. 281) granting summary

judgment in favor of the FTC, the Court finds that Defendants participated in deceptive and

unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, the FTC's

Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and the Mortgage Assistance Relief

Services Rule ("MARS Rule"), 16 C.F.R. Part 322, recodified as Mortgage Assistance Relief

Services ("Regulation O"), 12 C.F.R. Part 1015, in connection with the marketing and sale of

mortgage assistance relief services.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.   "**Assisting Others**" includes:

    1.   performing customer service functions, including receiving or responding to consumer complaints;

    2.   formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

    3.   formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

    4.   providing names of, or assisting in the generation of, potential customers;

    5.   performing marketing, billing, or payment services of any kind; or

    6.   acting or serving as an owner, officer, director, manager, or principal of any entity.

B.   "**Defendants**" means Lanier Law, LLC, d/b/a Fortress Law Group, Redstone Law Group, The Law Offices of Michael W. Lanier, also d/b/a Vanguard Law Group;

Fortress Law Group LLC; Liberty & Trust Law Group of Florida, LLC; Fortress Law Group, PC; Michael W. Lanier; and Rogelio Robles, aka Roger Robles, individually, collectively, or in any combination.

C.      "**Corporate Defendants**" means Lanier Law, LLC, d/b/a Fortress Law Group, Redstone Law Group, The Law Offices of Michael W. Lanier, also d/b/a Vanguard Law Group; Fortress Law Group LLC; Liberty & Trust Law Group of Florida, LLC; Fortress Law Group, PC; and their successors and assigns.

D.      "**Individual Defendants**" means Michael W. Lanier; and Rogelio Robles, aka Roger Robles.

E.      "**Established Business Relationship**" means a relationship between a Seller and a Person based on: (a) the Person's purchase, rental, or lease of the Seller's goods or services or a financial transaction between the Seller and Person, within eighteen months immediately preceding the date of the Telemarketing call; or (b) the Person's inquiry or application regarding a product or service offered by the Seller, within three months immediately preceding the date of a Telemarketing call.

F.      "**Financial Product or Service**" means any product, service, plan, or program represented, expressly or by implication, to:

1.      provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan, or other extension of credit;

2.      provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit, debit, or stored value cards;

3.      improve, repair, or arrange to improve or repair, any consumer's credit record,

credit history, or credit rating; or

4.      provide advice or assistance to improve any consumer's credit record, credit

history, or credit rating.

G.      "**National Do Not Call Registry**" means the "do-not-call" registry of telephone

numbers maintained by the Commission pursuant to 16 C.F.R. §310.4(b)(1)(iii)(B).

H.      **"Outbound Telephone Call"** means a telephone call initiated by a telemarketer to

induce the purchase of goods or services or to solicit a charitable contribution.

I.      "**Person**" means a natural person, organization, or other legal entity, including a

corporation, partnership, proprietorship, association, cooperative, or any other group

or combination acting as an entity.

J.      "**Secured or Unsecured Debt Relief Product or Service**" means:

1.      With respect to any mortgage, loan, debt, or obligation between a Person and

one or more secured or unsecured creditors or debt collectors, any product,

service, plan, or program represented, expressly or by implication, to:

a.      stop, prevent, or postpone any mortgage or deed of trust foreclosure

sale for a Person's dwelling, any other sale of collateral, any

repossession of a Person's dwelling or other collateral, or otherwise

save a Person's dwelling or other collateral from foreclosure or

repossession;

b.      negotiate, obtain, or arrange a modification, or renegotiate, settle, or in

any way alter any terms of the mortgage, loan, debt, or obligation,

including a reduction in the amount of interest, principal balance, monthly payments, or fees owed by a Person to a secured or unsecured creditor or debt collector;

c.  obtain any forbearance or modification in the timing of payments from any secured or unsecured holder or servicer of any mortgage, loan, debt, or obligation;

d.  negotiate, obtain, or arrange any extension of the period of time within which a Person may (i) cure his or her default on the mortgage, loan, debt, or obligation, (ii) reinstate his or her mortgage, loan, debt, or obligation, (iii) redeem a dwelling or other collateral, or (iv) exercise any right to reinstate the mortgage, loan, debt, or obligation or redeem a dwelling or other collateral;

e.  obtain any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling or other collateral; or

f.  negotiate, obtain, or arrange (i) a short sale of a dwelling or other collateral, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a mortgage, loan, debt, or obligation other than a sale to a third party that is not the secured or unsecured loan holder.

The foregoing shall include any manner of claimed assistance, including auditing or examining a Person's application for the mortgage, loan, debt, or obligation.

2.      With respect to any loan, debt, or obligation between a Person and one or more unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication, to:

   a.      repay one or more unsecured loans, debts, or obligations; or

   b.      combine unsecured loans, debts, or obligations into one or more new loans, debts, or obligations.

K.      **"Seller"** means any Person who, in connection with a Telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration, whether or not such Person is under the jurisdiction of the Commission.

L.      "**Telemarketing**" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call.

## ORDER

## I.      BAN ON SECURED AND UNSECURED DEBT RELIEF PRODUCTS AND SERVICES

IT IS ORDERED that Defendants are permanently restrained and enjoined from advertising, marketing, promoting, offering for sale, or selling, or Assisting Others in the advertising, marketing, promoting, offering for sale, or selling, of any Secured or Unsecured Debt Relief Product or Service.

## II.   PROHIBITION AGAINST MISREPRESENTATIONS RELATING TO FINANCIAL PRODUCTS AND SERVICES

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any Financial Product or Service, are permanently restrained and enjoined from misrepresenting, or Assisting Others in misrepresenting, expressly or by implication:

A.   the terms or rates that are available for any loan or other extension of credit, including:

1.   closing costs or other fees;

2.   the payment schedule, monthly payment amount(s), any balloon payment, or other payment terms;

3.   the interest rate(s), annual percentage rate(s), or finance charge(s), and whether they are fixed or adjustable;

4.   the loan amount, credit amount, draw amount, or outstanding balance; the loan term, draw period, or maturity; or any other term of credit;

5.   the amount of cash to be disbursed to the borrower out of the proceeds, or the amount of cash to be disbursed on behalf of the borrower to any third parties;

6. whether any specified minimum payment amount covers both interest and principal, and whether the credit has or can result in negative amortization; or

7. that the credit does not have a prepayment penalty or whether subsequent refinancing may trigger a prepayment penalty and/or other fees;

B. the ability to improve or otherwise affect a consumer's credit record, credit history, credit rating, or ability to obtain credit, including that a consumer's credit record, credit history, credit rating, or ability to obtain credit can be improved by permanently removing current, accurate negative information from the consumer's credit record or history;

C. that a consumer will receive legal representation;

D. any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

E. that any Person is affiliated with, endorsed or approved by, or otherwise connected to any other Person; government entity; public, non-profit, or non-commercial program; or any other program;

F. the nature, expertise, position, or job title of any Person who provides any product, service, plan, or program;

G.     the Person who will provide any product, service, plan, or program to any

consumer;

H.     that any Person providing a testimonial has purchased, received, or used the

product, service, plan, or program;

I.     that the experience represented in a testimonial of the product, service, plan,

or program represents the Person's actual experience resulting from the use of

the product, service, plan, or program under the circumstances depicted in the

advertisement; or

J.     any other fact material to consumers concerning any Financial Product or

Service, such as:  the total costs; any material restrictions, limitations, or

conditions; or any material aspect of its performance, efficacy, nature, or

central characteristics.

## III.   PROHIBITION AGAINST ABUSIVE TELEMARKETING PRACTICES

IT IS FURTHER ORDERED that, in connection with Telemarketing,

Defendants, Defendants' officers, agents, employees, and attorneys, and all other

Persons in active concert or participation with any of them, who receive actual notice

of this Order, whether acting directly or indirectly, are permanently restrained and

enjoined from engaging in, causing others to engage in, or Assisting Others engaging

in, any of the following practices:

A.     Initiating any Outbound Telephone Call to any Person at a telephone number

on the National Do Not Call Registry, unless Defendants prove that:

1.  they have obtained the express agreement, in writing, of such Person to place calls to that Person.  Such written agreement shall clearly evidence such Person's authorization that calls made by or on behalf of Defendants may be placed to that Person, and shall include the telephone number to which the calls may be placed and the signature of that Person; or

2.  Defendants have an Established Business Relationship with such Person, and that Person has not previously stated that he or she does not wish to receive Outbound Telephone Calls made by or on behalf of Defendants;

B.  Initiating any Outbound Telephone Call to a Person when that Person previously stated that he or she does not wish to receive an Outbound Telephone Call made by or on behalf of Defendants;

C.  Initiating any Outbound Telephone Call to a telephone number within a given area code when the annual fee for access to the telephone numbers within that area code that are on the National Do Not Call Registry has not been paid by or on behalf of Defendants, unless the telephone call is:

1.  A solicitation to induce charitable contributions;

2.  To a business;

3.  To Persons who have given the Seller their express agreement, in writing and signed, to receive call from Defendants; or

4. To Persons who have an Established Business Relationship with Defendants.

## IV. MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A. Judgment for equitable monetary relief is entered in favor of the Commission against Defendants, jointly and severally, in the amount of $13,586,713, which is the amount of unjust enrichment caused by Defendants' conduct. As a result of the separate Stipulated Order for Permanent Injunction and Monetary Judgment between the Commission and Edward William Rennick III, Redstone Law Group LLC, and Surety Law Group LLP ("Settling Defendants"), Settling Defendants are jointly and severally liable for such monetary relief to the extent of $8,000,000, subject to the terms and condition of the Stipulated Order. The amount owed on the Judgment by Defendants, as defined in this Final Order, shall be reduced by any amount actually recovered by the Commission from the Settling Defendants. Furthermore, the $8,000,000 owed by the Settling Defendants, as set forth in the Stipulated Order, shall be reduced by any amount actually recovered by the Commission from the Defendants, after the Commission has recovered $5,586,713 from Defendants.

B.      In partial satisfaction of the monetary judgment,

    1.      Defendants shall cooperate fully with the Liquidating Agent[1] and take such steps as the Liquidating Agent may require to transfer to the Liquidating Agent possession and legal and equitable title to any assets listed in Appendix A within 10 days of request by the Liquidating Agent, including executing any documents, procuring the signatures of any Person or entity under the control of any Defendant, providing access to the assets and any necessary information, and turning over the assets.

    2.      Defendants shall waive all claims to, unconditionally release, and consent to any transfer to the Liquidating Agent the possession and legal and equitable title of any of the assets listed in Appendix A requested by the Liquidating Agent.

    3.      Until Defendants surrender possession and legal and equitable title of any asset to the Liquidating Agent:

        a.      Defendants shall take no action to diminish the value of their assets, including any structures, fixtures, and appurtenances thereto, and shall maintain in good working order and in the same condition, excepting normal wear and tear, as on the date they executed their sworn financial statements, dated June 30, 2015,

---

[1] The Court appoints the Liquidating Agent and enumerates his duties in Part V.

for Michael W. Lanier and dated June 23, 2015, for Rogelio
Robles;

b.      Defendants shall remain current on all amounts due and payable
on the assets, including but not limited to tax, insurance,
maintenance, and similar fees;

c.      Defendants shall cause existing insurance coverage for the assets
to remain in force until the surrender of possession and legal and
equitable title and shall both notify the insurance carriers
immediately of the appointment of the Liquidating Agent and
request that the Liquidating Agent and Plaintiff be added to the
insurance policy or policies as additional insureds thereunder.

4.      Defendants shall not add any encumbrances to any assets.

5.      Until Defendants transfer possession of any real property to the
Liquidating Agent, Defendants shall remain current on all amounts due
and payable on the real property, including but not limited to tax,
insurance, homeowner's assessments, reasonable and necessary
maintenance, and similar fees.

6.      Nothing in this Order requires Defendants to pay any amount relating to
or concerning the assets, including but not limited to any taxes, insurance,
homeowner's assessments, maintenance, and similar fees after Defendants
have vacated and transferred possession and legal and equitable title of
the assets to the Liquidating Agent. The transfer of possession of the real
property occurs when Defendants vacate the real property in "broom

clean condition," delivers all keys and security codes, if any, to the Liquidating Agent along with written notice that possession is surrendered, or has transferred legal and equitable title.

C.    In accordance with 31 U.S.C. § 7701, Defendants are required, unless already provided, to furnish to the Commission with his taxpayer identification number (social security number or employer identification number), which shall be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

D.    In partial satisfaction of the monetary judgment, the following frozen assets held by third parties in the name of, or for the benefit of, Defendants shall be transferred to the Commission as follows:

1.    Within fifteen (15) days of receiving notice of this Order, Wells Fargo Bank, its parent corporation, subsidiaries, principals, and agents shall transfer to the Commission by electronic fund transfer or certified bank or cashier's check, in accordance with instructions to be provided by the Commission, all funds in the name of, or for the benefit of, Defendants, including but not limited to:

a.    Account No. XXXXXX4371, held in the name of Rogelio Robles;

b.    Account No. XXXXXX1872, held in the name of Lanier Law, LLC.;

c.    Account No. XXXXXX9822, held in the name of Michael W.

Lanier;

d.      Account No. XXXXXX7824, held in the name of Liberty &

Trust Law Group; and

e.      Account No. XXXXXX8203, held in the name of Fortress Law

Group LLP;

2.      Within fifteen (15) days of receiving notice of this Order, Chase Bank,

its parent corporation, subsidiaries, principals, and agents shall transfer

to the Commission by electronic fund transfer or certified bank or

cashier's check, in accordance with instructions to be provided by the

Commission, all funds in the name of, or for the benefit of,

Defendants, including but not limited to Account No. XXXXX0643,

held in the name of Lanier Law LLC;

3.      Within fifteen (15) days of receiving notice of this Order, VyStar

Credit Union, its parent corporation, subsidiaries, principals, and

agents shall transfer to the Commission by electronic fund transfer or

certified bank or cashier's check, in accordance with instructions to be

provided by the Commission, all funds in the name of, or for the

benefit of, Defendants, including but not limited to:

a.      Account No. XXXXX3278, held in the name of Lanier Law

LLC;

b.      Account No. XXXXXX0520, held in the name of Lanier Law

LLC;

       c.     Account No. XXXXX4433, held in the name of Lanier Law LLC; and

       d.     Account No. XXXXX8174, held in the name of Lanier Law LLC.

E.     Within fifteen (15) days of receiving notice of this Order, Wells Fargo Bank, its parent corporation, subsidiaries, principals, and agents shall transfer to the Liquidating Agent by electronic fund transfer or certified bank or cashier's check, in accordance with instructions to be provided by the Liquidating Agent, all funds in Account No. XXXXXX8418, held in the name of Liberty & Trust Law Group, to be used for expenses incurred prior to the payment of rents to the Liquidating Agent or prior to the obtaining of proceeds from the sale of assets;

F.     All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Defendants

have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

G.    The asset freezes imposed pursuant to the August 1, 2014 Preliminary Injunction Order (Doc. 59) and the February 6, 2015 Preliminary Injunction Order (Doc. 115) are modified only to permit the payments and transfers identified in the Monetary Judgment Section.  Upon completion of those payments and transfers, the asset freezes are dissolved with regard to these Defendants.

## V.    APPOINTMENT AND DUTIES OF LIQUIDATING AGENT

IT IS FURTHER ORDERED THAT Aaron Cohen is appointed as Liquidating Agent with all the rights and powers of an equity receiver, over the assets described in Appendix A ("the assets").

A.    As soon as reasonably possible, the Liquidating Agent shall, at reasonable cost and in a commercially reasonable fashion, determine which assets have value and liquidate such assets. In liquidating the accounts listed in Appendix A, the Liquidating Agent shall pay any necessary brokerage fees and taxes from the proceeds.  After the assets have been liquidated, the Liquidating Agent shall account for the net proceeds derived, and transfer all such net proceeds to the Commission. The Liquidating Agent shall make the transfer required by this Section by electronic fund transfer or certified or cashier's check, in accordance with instructions provided by the Commission.

B.     Upon transfer of legal and equitable title and possession, the Liquidating Agent is authorized to assume responsibility for management of the assets, including but not limited to making disbursements for operating expenses as may be appropriate, undertaking repairs, and taking any other actions necessary to efficiently manage the assets and to maintain its value.

C.     The Liquidating Agent shall take all necessary action to procure appropriate insurance for the assets naming the Liquidating Agent and the Commission as insureds. The Liquidating Agent may as an option keep in force the existing insurance coverage(s), each of which shall name the Commission and the Liquidating Agent as additional insureds thereunder.

D.     The Liquidating Agent shall have all necessary powers to operate and otherwise manage the assets including, without limitation, the following powers and responsibilities:

1.     to take possession of the assets;

2.     to supervise and oversee the management of the assets, including making payments and paying taxes as and when the Liquidating Agent has funds available from the assets, or from the liquidation of the assets, and to receive rents or other payments from any leases of the assets;

3.     to employ such counsel, real estate agents, auctioneers, appraisers, accountants, contractors, other professionals, and other such Persons

as may be necessary in order to carry out his duties as Liquidating Agent and to preserve, maintain, and protect the assets;

4.      to determine or abrogate, in the Liquidating Agent's sole sound business discretion, any or all agreements, contracts, understandings or commitments entered into by Defendants with respect to the assets to the extent permitted by applicable law;

5.      to open new accounts with, or negotiate, compromise or otherwise modify the Defendants' existing obligations with, third parties, including utility companies, other service providers or suppliers of goods and services related to the assets, and to otherwise enter into such agreements; and

6.      to apply to this Court for further directions and for such further powers as may be necessary to enable the Liquidating Agent to fulfill his duties.

E.      The Liquidating Agent shall keep a true and accurate account of any and all receipts and expenditures and periodically file with the Court a Liquidating Agent Report under oath, accurately identifying all such revenues received and expenditures made, including adequately detailed information concerning income, expenses, payables and receivables.  The first report is due no later than **sixty (60) days** after the Liquidating Agent's appointment, and periodic reports are due every **sixty (60) days** thereafter.  These periodic filings shall be served by the Liquidating Agent on the Commission's counsel.

F.    Defendants and their agents, employees or other representatives are enjoined from interfering in any manner with the Liquidating Agent's management and operation of the assets, and Defendants and their agents, employees or other representatives are enjoined and restrained from collecting any rents or profits which are now or hereafter become due with respect to all or any portion of the assets and from interfering in any way with the Liquidating Agent's collection of such rents or profits.

G.    The Liquidating Agent shall not be bound by all or any unsecured contracts, agreements, understandings or other commitments in the nature of service contracts the Defendants had, have or may have with third parties with respect to the assets, whether oral or written, and the Liquidating Agent shall be authorized, by affirmative written ratification executed by the Liquidating Agent, to agree to become bound by any such contracts, agreements, understandings or other commitments, or may agree to enter into new or amended contracts, agreements, understandings or other commitments.

H.    Any and all sums collected by the Liquidating Agent over and above those necessary to manage the Property or those necessary to make payments authorized by this Order shall be paid to the Commission as directed by the Commission.

I.    The Liquidating Agent is entitled to reasonable compensation for the performance of duties undertaken pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by him. The Liquidating Agent's

compensation and the compensation of any Persons hired by him are to be paid solely from the assets and the proceeds of the sale of or rents from the assets, and such payments shall have priority over all other distributions except for any transfer fees, recording fees, or other payments owed through the transfer of the assets at the time of their sale.

J.   The Liquidating Agent shall file with the Court and serve on the parties a request for the payment of reasonable compensation at the time of the filing of periodic reports and no less than every **sixty (60) days**.  If any Defendant objects to the amount of the request, he must file an objection within **five (5) days**.  If the request is reasonable, and absent a valid objection, the Court will issue an order authorizing payment pursuant to the terms of this Order.  The Liquidating Agent shall not increase the fees or rates used as the bases for such fee applications without prior approval of the Commission and the Court. Absent a violation of this Order by Defendants that causes the Liquidating Agent to incur fees or expenses, Defendants shall not be liable for the Liquidating Agent's fees or expenses beyond the amount paid pursuant to Section IV.

K.   The Liquidating Agent shall file with the Clerk of this Court a bond in the sum of **$50,000** with sureties to be approved by the Court, conditioned that the Liquidating Agent will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

L.      Upon the final transfer of all funds to the Commission pursuant to this Section V, the duties of the Liquidating Agent shall terminate. The Liquidating Agent shall file his final application for fees, complete liquidation, and terminate his service within 270 days of the execution of this Order, unless the Court approves an extension beyond 270 days upon a showing of good cause. At the termination of Liquidating Agent's duties, the Liquidating Agent shall transfer any unliquidated right, title, and interest in the assets at the direction of the Commission.

## VI.      COOPERATION WITH THE LIQUIDATING AGENT

IT IS FURTHER ORDERED that the Defendants must provide to the Liquidating Agent the following:

A.      The most recent invoice or other communication received from any mortgage company or other entity holding a lien or encumbrance against any of the assets;

B.      The names of the renters occupying any of the assets and the amount of rent being paid;

C.      A copy of the leases between any of the Defendants and the renters; and

D.      A copy of any and all insurance policies existing regarding any of the assets.

## VII.    CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of

them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from directly or indirectly:

    A.    disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the marketing or sale of any Secured or Unsecured Debt Relief Product or Service and

    B.    failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## VIII.   ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

    A.    Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 5 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participated in conduct related to the subject matter of this Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled "Compliance Reporting."  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order and submit them to the Federal Trade Commission.

## IX.   COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission:

A.     180 days after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.     Each Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate

with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which each Individual Defendant must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.     Additionally, each Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Individual Defendant performs services whether as an employee or otherwise and any entity in which such Individual Defendant has any ownership interest; and (c) describe in detail such Individual Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.     For 20 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

    1.     Each Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

    2.     Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which Individual Defendant performs services whether as an employee or otherwise and any entity in which such Individual Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. §

1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.    Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580. The subject line must begin:  FTC v. Lanier Law LLC, File No. X140039.

## X.    RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years.  Specifically, Corporate Defendants and Individual Defendants for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.    accounting records showing the revenues from all goods or services sold;

B.    personnel records showing, for each Person providing services, whether as an employee or otherwise, that Person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.     records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.     all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.     a copy of each unique advertisement or other marketing material.

## XI.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order, including the financial representations, and any failure to transfer any assets as required by this Order:

A.     Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.     For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant. Defendants must permit representatives of the Commission to interview any employee or other Person affiliated with any Defendant who has agreed to such an interview. The Person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning each Individual Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XII.   RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this 12th day of August, 2016.**

MARCIA MORALES HOWARD
United States District Judge

APPENDIX A

For Defendant Michael W. Lanier:

1.    2013 Dodge Charger automobile, identified in Defendant Michael W. Lanier's financial statement dated June 30, 2015;

2.    2003 Lincoln Navigator automobile;

3.    1986 Thunderbird Formula 242 boat, identified in Defendant Michael W. Lanier's financial statement dated June 30, 2015;

4.    2007 Suzuki M109R motorcycle, identified in Defendant Michael W. Lanier's financial statement dated June 30, 2015; and

5.    real estate properties, including but not limited to properties at the following addresses, identified in Defendant Michael W. Lanier's financial statement dated June 30, 2015, or by other means:

a. 2711 Dean Road, Jacksonville, FL 32216

b. 2709 Dean Road, Jacksonville, FL 32216

c. 2741 Sack Dr. E, Jacksonville, FL 32216

d. 7809 Catawba Dr., Jacksonville, FL 32217

e. 7831 Miruelo Cir E Jacksonville, FL 32217

f. 311 W Ashley St., Unit 1708, Jacksonville, FL 32202

g. 41 Golden Way, Richmond Hill, GA 31324

h. 1768 Park Terrace West, Atlantic Beach, FL 32233

i. 12311 Kensington Lakes Drive, # 2906, Jacksonville, FL 32246.

For Defendant Rogelio Robles:

1.      2010 Chevrolet Camaro automobile, identified in Defendant Rogelio Robles's financial statement dated June 23, 2015;

2.      real estate property at 883 Garrison Drive, St. Augustine, Florida 32092, identified in Defendant Rogelio Robles's financial statement dated June 23, 2015;

3.      Defendant Robles's 50% interest in the real property at 3707 Berkeley Road, Darlington, Maryland, identified in Defendant Rogelio Robles's financial statement dated June 23, 2015; and

4.      Defendant Robles's ownership interest in Fortress Legal Services, described as worth $1,088,000, identified in Defendant Rogelio Robles's financial statement dated June 23, 2015.